WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Elizabeth Jenkins, | No. CV-12-00786-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, Susan Elizabeth Jenkins, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) with a protective filing date of July 15, 2008 alleging an onset of disability beginning May 1, 2008 due to pain and numbness in her legs and pain in her back and hips with sitting; pain with lifting or carrying overhead; asthma; "feel[ing] nervous and crying all the time and [..] snapping really easily"; migraines with loss of eyesight, headaches, and dizziness. Transcript/Administrative

Record ("Tr.") 108-110, 116-118, 127, 131. The application was denied initially and on reconsideration. Tr. 86-89, 91-93. A hearing before an Administrative Law Judge ("ALJ") was held on October 28, 2009. Tr. 46-69. The ALJ issued a decision on April 1, 2010, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 31-42. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 6-8.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) After considering the record before the Court and the parties' briefing of the issues, the Court reverses Defendant's decision and remands for further proceedings consistent with this Order.

**II.   THE RECORD ON APPEAL**

A. <u>Plaintiff's Background and Statements in the Record</u>

Plaintiff was fifty-seven (57) years old at the time of the ALJ's decision with four or more years of college and past relevant work as a product technician in a missile systems business.  Tr. 127, 131, 136.

Plaintiff testified at her hearing before the ALJ on February 26, 2010, that she left her job as a product technician because she has "a lot of problems with [her] … neck and … legs and back." Tr. 49. She has also had two ventral hernia surgeries performed within nine months, and still has problems with her stomach. Tr. 49. She stated that she has severe pain in her neck which goes all the way down into her arms, her arms go numb when she raises them above her head, has cramps in her legs and feet, and abdominal

problems, including inflamed colitis, an esophagus repair, a ventral hernia, irritable bowel syndrome, chronic diarrhea controlled by medication, asthma, and depression. Tr. 52-56.

Plaintiff testified that she takes Tramadol and Valium for the pain in her back. Tr. 57-58. Her pain medications make her sleepy. Tr. 61.  She takes Alupent, Albuterol and Zocor for asthma, and uses a nebulizer. Tr. 61-62. She has a CPAP machine for sleep apnea. Tr. 61-62. She takes Asacol for her colitis. Tr. 65.

In a typical day, Plaintiff wakes up, has coffee and reads the newspaper, sits outside to smoke, then her boyfriend drives her to appointments if she has them or else sits for a while, or does work around the house. Tr. 57. When she is working around the house she sits down for a while when she is hurting, and then gets back up and forces herself to do stuff. Tr. 57. She lies down if it doesn't stop hurting. Tr. 57. She gets migraines but does not take any medication for them. Tr. 57. She doesn't do a lot of walking, but she does do arts and crafts, like crocheting, for approximately half-an-hour. Tr. 58. She gets depressed every day. Tr. 66. When she gets migraines, she lies down and puts on a cold cloth. Tr. 66. She would work with her migraines, but would end up at the nurse's station every day. Tr. 67.  While she worked at Raytheon, however, she was not at the nurse's station every day. Tr. 67-68.

The ALJ did not take testimony from a vocational expert ("VE").

B.  Relevant Medical Evidence Before the ALJ[1]

1)  *Treating Sources*

The medical record of evidence contains records from Plaintiff's primary care physician, Jorge O'Leary, M.D., for the time period from January 2006, to April, 2008. Tr. 199-319. Dr. O'Leary's treatment notes, though difficult to decipher, indicate Plaintiff followed up with him for treatment of hypertension, asthma, rhinitis, irritable bowel syndrome ("IBS"), GERD, back and leg pain, and follow up care following two ventral hernia repairs on February 22, 2007. Tr. 237-263. Dr. O'Leary's records also include short term work-related restrictions, and referrals to specialists and for diagnostic testing. Tr. 199-319.

In August, 2006, Dr. O'Leary completed a "Certification of Physician or Practitioner" claim, indicating that Plaintiff was "incapacitated" due to bronchial asthma, chronic diarrhea, chronic neck pain, and severe episodes of hypoglycemia, yet also indicating that she was able to perform work of any kind and that she was able to perform the essential functions of her position for her then employer (Raytheon).  Tr. 204-205.

In November, 2006, Dr. O'Leary completed an insurance claim form, noting specific restrictions to avoid lifting over ten pounds, avoid prolonged standing, walking or sitting and avoid bending, stooping or leaning. Tr. 230. Her prognosis for returning to work on modified duty was "fair to good." Tr. 230.

---

[1] Plaintiff raises no issues regarding the findings of the ALJ in respect to nonexertional limitations caused by mental impairment, thus the Court reviews only the evidence related to Plaintiff's claim that the ALJ erroneously assessed evidence provided by Plaintiff's treating physicians and improperly discounted Plaintiff's subjective complaints.

In February, 2007, Dr. O'Leary inscribed on prescription forms that Plaintiff was restricted from heavy lifting, and should be sent home sick from February 12, 2007 to February 28, 2007. Tr. 211.

Plaintiff received surgical treatment for recurrent ventral hernias by Gary L. Henderson, M.D., on at least three occasions between March 2007 and February 2009 Tr. 328-329, 331-332, 345-346, 347-348, 400. In January 2008, Dr. Henderson noted that other than the treatment for recurrent ventral hernias, his review of systems resulted in normal findings Tr. 329. As of May 2008, Plaintiff reported to Dr. Henderson that she was doing well with no complaints Tr. 324.

Plaintiff's treating physician Fredelito B. Tiu, M.D, completed a medical source statement in February 2010, opining on Plaintiff's functional limitations. Tr. 415-419. Based on Plaintiff's diagnosis of hypertension, hyperlipidemia, and asthma, and Plaintiff's symptoms of occasional shortness of breath, and neck and back pain, and clinical symptoms of tenderness in the neck and back, Dr. Tiu opined: during a typical workday Plaintiff's symptoms are severe enough to constantly interfere with attention and concentration necessary for simple work; was incapable of even "low stress" jobs; could walk about half a block; could sit for ten minutes at a time, stand for ten minutes at a time, for a total of less than two hours a day in an eight-hour working day; must walk every 30 minutes for a 15-minute period of time; must be able to shift position; would need to take unscheduled breaks greater than four hours a day for a duration of more than four hours a day; requires elevated legs for three to four hours in a workday; could never

lift and carry; could never look down, turn her head right or left, look up, or hold her head in a static position; could never twist, stoop, crouch, climb ladders or stairs; has fingering limitations. Tr. 415-418. The medical evidence of record before the ALJ included this opinion and some diagnostic radiology reports indicating mild degenerative changes in Plaintiff's cervical spine. Tr. 421-422.

At Tr. 535-539 are reports issued by specialists to whom Dr. Tiu had referred the Plaintiff, including a report from Scott D. Goorman, M.D. of Tucson Orthopedic Institute dating from January, 2009, evaluating Plaintiff's complaints of neck and lower back pain, and bilateral leg and arm numbness (Tr. 535). On physical exam, Plaintiff demonstrated normal range of motion of the cervical and lumbar spine as well as normal muscle strength and reflexes in the lower extremities. A straight leg raise test (to detect signs of nerve root irritation) was normal with good pedal (foot) pulses and no edema in the extremities. Dr. Goorman noted that x-rays of Plaintiff's cervical and lumbar spine revealed only mild age-appropriate degenerative changes. Tr. 535.  Pierre Sakali, M.D. of Allergy, Asthma Associates saw Plaintiff on January 20, 2010. Tr. 536-537. A diagnosis of asthma was provided and prescription medication was prescribed and followup was scheduled in three months. Tr. 536-537.  Plaintiff was seen by Rizwan Safdar, M.D., in May, 2009 for follow up following a surgical procedure, with complaints of abdominal pain and frequent diarrhea. Tr. 538-39. Plaintiff was assessed with a possible infection following surgery and was advised to consult her surgeon, and with indeterminate colitis, possibly irritable bowel syndrome, and was prescribed medication and recommended

follow up. Dr. Tiu's treatment notes also included a report from Plaintiff's sleep study from Arete Sleep Health which was done on November 7, 2010 (Tr. 540-541 and Tr. 546-549) and a surgical consultation with Shawn D. Stevenson, D.O. of Agave Surgical Associates, P.C. to assess possible surgical responses to her ongoing abdominal pain of unknown etiology. Tr. 544-545.

Dr. Sadfar submitted records of several diagnostic procedures (Tr. 390-391, 402-405, 406-407, 408), and various procedures, including multiple aspirations of a seroma (Tr. 396, 398) and ventral hernia repair (Tr. 400).

### 2)  The ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2008. Tr. 35, ¶ 2. The ALJ found that Plaintiff had the following medically determinable impairments: ventral hernias, degenerative disc disease of the lumbar and thoracic spine, asthma, sleep apnea, GERD (gastroesophogeal reflux disease), migraines and obesity. Tr. 37, ¶ 3. The ALJ found that Plaintiffs impairments or combination of impairments was not severe. Tr. 37, ¶ 4. The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments. …" Tr. 37. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 49, ¶ 5.

*3)  Additional Evidence Submitted to the Appeals Council*

After the ALJ's July 26, 2010 decision, Plaintiff submitted additional evidence in the form of medical records to the Appeals Council. Tr. 630-695. Additional records from Dr. Tiu were submitted to the Appeals Council. Tr. 630-695.  From September 2011 to December, 2011, Dr. Tiu saw Plaintiff regularly to care for Plaintiff's conditions of hypertension, hyperlipidemia, depression, asthma, allergies, and her gastrointestinal conditions, and treated Plaintiff for foot pain, carpal tunnel syndrome, backache, numbness and tingling pain in her hands. Tr. 686-695.

Also submitted to the Appeals Council are records from Northstar Neurology, P.C. from January-February, 2011 including an MRI of Plaintiff's lumbo-sacral spine and prescription for back brace to ease lower back pain, as well as a referral for a pain management consultation. Tr. 550-556.

The Appeals Council found that neither Plaintiff's points of contention, nor the additional evidence provided a basis for changing the ALJ's decision. Tr. 1-4. Specifically, the Appeals Council found that the new information was about the time period post-dating the ALJ's decision on July 26, 2010, and thus did not affect the decision whether Plaintiff was disabled on or before July 26, 2010. Tr. 2.

**III.   DISCUSSION**

A. Argument

Plaintiff raises two points of error. Plaintiff contends that the ALJ erred by rejecting the opinions of treating physicians and Plaintiff's subjective testimony without

giving adequate reasons. (Doc. 16.) The Commissioner contends that the ALJ did not err in concluding that Dr. Tiu's opinion was entitled to little weight because the medical evidence did not support the opinion; and, though the ALJ mistakenly referred to Dr. Henderson as Plaintiff's treating physician, the ALJ correctly cited to the records from Plaintiff's treating physician, Dr. O'Leary, and properly discussed the applicable facts derived from review of the proper medical records. Defendant further argues that Dr. O'Leary's opinion was internally inconsistent. Finally, the Commissioner argues that the ALJ reasonably evaluated Plaintiff's subjective complaints. (Doc. 20.)

B.  Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *see also* 42 U.S.C. § 405(g). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins v. Soc.Sec.Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged disability onset date, (2) he has a severe impairment, and (3) his impairment meets or

equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a)-(g).

C. Analysis

*1) Treating Sources*

Plaintiff contends that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians, Dr. Tiu and Dr. O'Leary. Plaintiff's treating physicians are "employed to cure and [have] a greater opportunity to know and observe [Plaintiff] as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989)(citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Thus, their medical opinions are entitled to "special weight," and if the ALJ chooses to disregard them, she must, "set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." *Lingenfelter v. Astrue*,  504 F.3d 1028, 1038 (9th Cir. 2007) (citing *Embrey*, 849 F.2d at 422, n. 3).

Regarding Dr. O'Leary, the first issue the Court must address is whether or not the ALJ addressed Dr. O'Leary's opinion in the first instance. Regarding evidence from Plaintiff's primary care physician, the ALJ's decision states:

> Claimant's primary care physician Gary Henderson, MD has not placed any limitations on claimant's ability to work despite her infrequent complaints of pain. No detailed examinations were completed by Dr. Henderson or his physician assistants, but claimant did not continuously complain about back pain, asthma, sleep problems or migraine headaches. During their review of claimant's symptoms, no limitations were noted. (Exhibit 3F).

Tr. 37.  No mention is made of Dr. O'Leary in the ALJ's decision. The Commissioner submits that although the ALJ mistakenly referred to Dr. Henderson as Plaintiff's primary care physician, the exhibit reference from that paragraph (Exhibit 3F) refers to the records from Dr. O'Leary, who was Plaintiff's primary care physician from 2006 to 2008, thus, the ALJ merely reflected the wrong name in his reasonable evaluation of the evidence, and properly discussed the applicable facts derived from review of the medical records contained at Exhibit 3F. (Doc. 20, at 14.)

The Commissioner is correct that Exhibit 3F contains Dr. O'Leary's treatment records from 2006 to 2008. Tr. 199-319. As Plaintiff submits in rebuttal, however, if the ALJ relied on these records to reach her conclusion, then the conclusion she reached upon review of the record is erroneous. Contrary to the ALJ's determination, Dr. O'Leary did in fact examine plaintiff (Tr. 199-263), referred Plaintiff to several specialists and received reports from those specialists, including reports from surgical consults, gastroenterologists, neurologists, radiologic testing, and laboratory testing. Tr. 264-319. Dr. O'Leary's records also contain, contrary to the ALJ's conclusion, at least three

opinions of work limitations or restrictions in August, 2006, (Tr. 204-205), November, 2006, (Tr. 230) and February, 2007 (Tr. 211). Thus, this Court cannot conclude that the ALJ simply mistakenly referred to Dr. Henderson, but was actually addressing Dr. O'Leary's opinion. It is just as possible that the ALJ was referring to Dr. Henderson's record, but wrote down the wrong exhibit number. Dr. Henderson's exhibits are found at Exhibit 5F, and, consistent with the ALJ's decision, offer no opinion as to limitations or restrictions, and, unlike Plaintiff's symptomatic complaints to Dr. O'Leary, do not contain complaints of back pain, asthma, sleep problems or migraine headaches. This is not surprising, as Dr. Henderson was a surgical specialist treating Plaintiff's recurrent hernias.

The Court finds that the ALJ failed to acknowledge Dr. O'Leary's opinions, and thus erred by failing to forth "specific legitimate reasons" based on "substantial evidence" to reject Dr. O'Leary's opinions.

The ALJ gave little weight to Dr. Tiu's opinion:

> The . . . [ALJ] has considered and evaluated the opinion of Dr. Tiu and gives it little weight. The limitations provided in Dr. Tiu's medical source statement appear to be directed by the claimant and not Dr. Tiu's objective examination or radiographic evidence (Exhibits 18F/2; 19F). Dr. Tiu had limited contact with claimant and during his treatment of her, noted no complaints of pain or other symptoms from claimant consistent with his opinion (Exhibit 21F). Dr. Tiu's assessment was not supported by clinical analysis or medically objective examinations and is generally inconsistent with the balance of the medical record. SSR 06-3p.

(Tr. 38-39.) Contrary to the ALJ's finding that Dr. Tiu had limited contact with Plaintiff, and his opinion was not based on Dr. Tiu's objective examination or radiographic

evidence, Dr. Tiu examined Plaintiff on numerous occasions and noted lumbar tenderness (Tr. 582, 608, 610, 615, 617); a positive straight leg test (id., 608); abdominal tenderness (Tr. 595); tender to palpation to the left thigh and calf (Tr. 600); tender left knee with swelling (Tr. 806); edema to the leg and ankle (Tr. 612). Contrary to the ALJ's finding that Dr. Tiu noted no complaints of pain or other symptoms consistent with his opinion, Dr. Tiu's treatment notes indicated complaints of: neck and back pain (Tr. 580, 582, 608, 610, 617); sleeping problem (Tr. 595); fatigue (Tr. 595); abdominal pain (Tr. 595); diarrhea (Tr. 595); foot and leg pain (Tr. 600); numbness and tingling lower extremities (Tr. 600); pain and swelling in the knee (Tr. 606); and muscle and joint pains (Tr. 621). The clinical indications for consultative examinations that Dr. Tiu ordered included: pain (lumbosacral x-ray) (Tr. 420), (cervical spine x-ray) (Tr. 421); neck pain and headache (cervical spine x-ray) (Tr. 422); neck and low back pain, bilateral arm and leg numbness (Dr. Goorman, consultative exam) (Tr. 535); hives and itching (Dr. Sakall, consultative exam) (Tr. 536-537); abdominal pain (Dr. Safdar, consultative exam) (Tr. 538-539), (Dr. Stevenson, surgical consultative exam) (Tr. 544-545); and sleep issues (Tr. 540-541, 627).

As Plaintiff contends, "Dr. Tui's actual records and correspondence to and from consultants and the tests ordered under his name tell us he was really central to managing and following the patient's care." (Doc. 16, at 11.) Neither is there any support for the ALJ's speculation that Dr. Tiu's medical source statement was directed by Plaintiff. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)(concluding that the purpose for which

medical reports are obtained does not provide a legitimate basis for rejecting them). While the Secretary "may introduce evidence of actual improprieties," no such evidence exists here. *Id.* (Secretary may not assume that doctors routinely lie in order to help their patients collect benefits) (quoting *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993)).

The Court finds that the evidence in the record does not support the ALJ's rationale for giving Dr. Tiu's opinion little weight.  Accordingly, the Court finds that the ALJ's decision is not based on substantial evidence.

*2) Credibility*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[2] Once a claimant has

---

[2] Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id.* at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

produced objective evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 345 (9th Cir. 1991) (citing *Cotton*, 799 F.2d at 1407). Rather, the adjudicator must "specifically make findings which support this conclusion. These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (internal citation and quotation omitted). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Plaintiff's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F .3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted). In weighing a claimant's credibility, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). *See also Turner v Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 693 (9ᵗʰ Cir. 2009) ("[T]the ALJ provided clear and convincing reasons to reject [the claimant's] subjective complaint testimony.").

An ALJ's error may be harmless where the ALJ has provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9ᵗʰ Cir. 2009); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9ᵗʰ Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9ᵗʰ Cir. 2004). In this context, an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197; *see also Carmickle*, 533 F.3d at 1162.

The ALJ first identified the testimony of the Plaintiff's that he was considering:

> Claimant testified that she has problems with her neck legs and back. She stated that her neck pinches and she has burning and severe pain from her neck all the way to her legs. When she raises her arms above her head, they go numb. She gets cramps in her legs and feet. She has inflamed golitis and has had two ventral hernia surgeries and esophageal repair. She stated that her stomach is swelled and makes it sore. Claimant states she has constant diarrhea from irritable bowel syndrome and migraine headaches daily. She also does not take medication for her migraines and does not take other medication regularly because it makes her sleepy. She also gets short of breath from her asthma and has a CPAP machine for sleep apnea.

Tr. 37

The ALJ then found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no

severe impairment or combination of impairment." (Tr. 37.) As the Seventh Circuit Court of Appeals explains, the manner in which this "boilerplate language" is used in the Commissioner's credibility analysis "gets things backwards." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Addressing identical language and finding that the "problem is that the assessment of a claimant's ability to work will often … depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.")

As the Court found in *Bjornson*, the statement by the ALJ that Plaintiff's statements were "not entirely credible" yields no clue to what weight the ALJ gave that testimony, and "fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Id.* (citations omitted).

If, however, "the ALJ has made specific findings justifying a decision to disbelieve an allegation … and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Several courts in this Circuit have found that the mere use of the meaningless boilerplate language[3] is not cause for remand if the ALJ's conclusion is followed by sufficient reasoning. *See e.g. Jones v. Comm. of Soc.*

---

[3] Some of these Courts address similar boilerplate language in regards to an RFC finding; the reasoning and conclusions reached are equally applicable to a step-two severity analysis.

*Sec.*, 2012 WL 6184941, at * 4 (D.Or. 2012)(boilerplate language is a conclusion which may be affirmed if the ALJ's stated reasons for rejecting the plaintiff's testimony are clear and convincing); *Bowers v. Astrue*, 2012 WL 2401642, at *9 (D.Or. 2012)(concluding that this language erroneously reverses the analysis, but finding such error harmless because the ALJ cited other clear and convincing reasons for rejecting the claimant's testimony). The Court adopts this reasoning, and, despite the use of the boilerplate language which implies improper analysis, considers whether the ALJ's conclusion in this case is nonetheless supported by clear and convincing evidence.

The ALJ in this case first addressed Plaintiff's migraines, and noted that she rarely complained of migraines to her physicians, the medical record did not support her claim that she has daily migraine headaches or has been treated for frequent headaches, takes no medication and her migraines resolve with rest, and denied visiting the nurse's station daily at work. The ALJ's conclusion that Plaintiff's symptoms alleged as a result of her migraine headaches is not credible was supported by clear and convincing reasons supported by substantial evidence.

The ALJ relied, however, on her analysis of the objective medical evidence to reject Plaintiff's claims of cramping in her feet and legs and side effects caused by her medication, as well as abdominal pain and diarrhea, neck and back pain, and shortness of breath. The ALJ relied on the record of "primary care physician Gary Henderson, MD" in finding that her primary care physician has not placed any limitations on Plaintiff's ability to work despite her infrequent complaints of pain. Tr. 37. As noted previously by

this Court, the ALJ's finding, both that Dr. Henderson was her primary care physician, and that her primary care physician had placed no limitations on her ability to work, are unsupported by the record. The ALJ stated that Plaintiff's ventral hernia repairs were completed before she stopped working and did not impose lasting limitations. Tr. 37. This is also unsupported by the record. Reviewing the evidence cited by the ALJ, it is apparent that Plaintiff had a third ventral hernia repair on February 4, 2009, after she left work. Tr. 400. The records before the ALJ indicate that she continued to be followed for abdominal pain through at least November 2, 2009. Tr. 390. The ALJ points to Dr. Safdar's diagnosis of mild gastritis as a basis for rejecting Plaintiff's symptoms. Dr. Safdar's diagnosis by itself, however, is insufficient support for the ALJ's finding that Plaintiff's symptoms are not credible, as the ALJ made the finding that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. The ALJ failed to consider any of the factors, listed above, in making her credibility determination. Without support for such a finding, the ALJ relied on the diagnosis alone to reject Plaintiff's statements. Though testimony or reports from her physicians concerning the nature, severity, and effect of the symptoms of which Plaintiff complained are properly considered by the ALJ, *see Smolen*, 80 F.3d at 1284, there is no testimony or report from any of the physicians who treated Plaintiff for her abdominal and gastric issues in the record regarding the nature, severity and effect of Plaintiff's symptoms. Further, there is nothing in any of the medical reports to suggest that her treating physician's disbelieved Plaintiff's reports of abdominal pain. The ALJ may not

discredit Plaintiff's allegations of pain solely on the ground that the allegations are unsupported by objective medical evidence. *See Bunnell*, 947 F.2d  345, 347-48 (declining to conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence.) The Court finds that, with the exception of the ALJ's analysis of Plaintiff's migraines, the ALJ erred by relying solely on the objective medical evidence for the ALJ's findings discrediting Plaintiff's allegations of pain and other symptoms. Additionally, many of the ALJ's findings are unsupported by the record. Thus, the Court finds that the ALJ's credibility determination, for all of Plaintiff's allegations except for those related to her migraines, is unsupported by the evidence.

### D. Conclusion

Plaintiff requests that the Court award benefits or, alternatively, remand for further proceedings. The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that evidence should be credited as true, and an action remanded for an award of benefits, where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g.*, *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988).

As discussed above, because the ALJ found that Plaintiff does not have a severe impairment, she stopped her inquiry at step two rather than proceeding to the other questions of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)-(g). There was no testimony from a vocational expert that the functional limitations found by Drs. O'Leary or Tiu would render Plaintiff unable to engage in any work. In cases where the testimony of a vocational expert has failed to address functional limitations as established by improperly discredited evidence, this Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." *Harman*, 211 F.3d at 1180 (citation omitted). Thus, a remand for further proceedings is appropriate in this case. On remand the ALJ should consider Dr. O'Leary's opinion and Dr. Tiu's opinoin.  On remand, the Commissioner shall review and address Plaintiff's symptoms individually, and support any credibility rejection with clear and convincing reasons.

Accordingly,

IT IS ORDERED:

1.      Defendant's decision denying benefits is REVERSED.

2.      The case is REMANDED to Defendant for further proceedings consistent with this Order.

3.      The Clerk is directed to enter judgment accordingly.

Dated this 11th day of February, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge